**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3182
_____

REGINALD DENNIS; RENEE DENNIS, Individually and as the
Natural Parent and Next Friends of B.D. a Minor; B. D., a minor,
Appellants

v.

ALLAN R. DEJONG, M.D.; COUNTY OF DELAWARE;
MARY GERMOND; META WERTZ; BETH PRODOEHL;
PATRICIA MCGETTIGAN; GINA GIANCRISTIFORO;
DR. DOE
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 5-10-cv-06789)
District Judge:  Honorable James Knoll Gardner
_____

Submitted Under Third Circuit LAR 34.1(a)
January 16, 2014
_____

Before: RENDELL, ROTH and BARRY, <u>Circuit Judges</u>

(Opinion Filed: February 12, 2014)
_____

OPINION
_____

BARRY, <u>Circuit Judge</u>

Appellants Reginald Dennis and Renee Dennis are the parents of Appellant B.D., a minor child who, following a 17-day hospitalization, was removed from their care for approximately nine months during the pendency of a child abuse investigation. The Dennises (or "the parents") now appeal the District Court's decision granting summary judgment against them on their procedural and substantive due process claims, brought pursuant to 42 U.S.C § 1983, against the County of Delaware (Pennsylvania), and individual defendants Mary Germond, Meta Wertz, Patricia McGettigan, and Gina Giancristiforo, each of whom was employed by Delaware County Children and Youth Services ("CYS") at the relevant times. We will affirm.

## I.    Background

On November 22, 2008, the Dennises took B.D., then two months old, to Christiana Hospital, where doctors examined him and performed a computed tomography ("CT") scan. Thereafter, the hospital issued a Report of Suspected Child Abuse, referred the matter to CYS, and transferred him to A.I. duPont Hospital for Children ("DuPont"). At DuPont, doctors performed additional testing and identified B.D. as suffering from a skull fracture, subdural hematoma, and rib fractures.

The Dennises were interviewed by Ms. McGettigan and Ms. Giancristiforo of CYS. They denied that any abuse had taken place, although Mrs. Dennis indicated that she had seen bruising on B.D. in the past and had spoken to Mr. Dennis about how to hold him appropriately. Mrs. Dennis also stated that on November 20, B.D. was acting

2

fussy and Mr. Dennis had spent 10-15 minutes alone with him to change his diaper. Later that night, she stated, they observed that B.D. was not moving his arm and that his hands were shaking.

At the request of CYS, a doctor who had examined B.D. (and had separately interviewed Mrs. Dennis) provided a report stating that B.D. suffered from a skull fracture and rib fractures and that he suspected physical child abuse. The doctor's report stated that he did not believe B.D. would be safe alone with either Mr. or Mrs. Dennis. CYS indicated to the Dennises that it would seek an out-of-home placement for B.D. upon his release from the hospital, and the Dennises requested that he be placed with family friends, the Stevensons.

On December 9, 2008, B.D.'s expected date of release from the hospital, Ms. Giancristiforo drafted a memorandum for the court, outlining the CYS allegations of abuse and requesting a protective custody order for B.D. The memorandum indicated that "[t]here are no known family resources to care for the baby upon his discharge from the hospital" and that "[c]ommunity caregivers have come forward," but that "[i]t is the agency's belief that the caregivers must complete a full resource home study before the agency would recommend that the baby be moved to their care." (App. at 576.) The memorandum was signed by Ms. Wertz and Ms. McGettigan and sent ex parte to Judge Maureen Fitzpatrick of the Court of Common Pleas of Delaware County. The court issued an order granting CYS protective custody of B.D. The order stated that "reasonable efforts were made by the agency to prevent placement." (App. at 578.) CYS

3

placed B.D. in medical foster care, despite an indication from his doctor that he would not require medical foster care.[1] On February 23, 2009, CYS transferred him to foster care in the Stevensons' home.

On December 11, 2008, an initial hearing was held in the Court of Common Pleas before Master David McNulty. At the hearing, the Dennises were represented by counsel and B.D.'s interests were represented by a Guardian Ad Litem, who objected to the return of B.D. to his parents. The Master determined that Judge Fitzpatrick's order would remain in effect until the adjudicatory hearing, which was scheduled for less than a month later. Although Pennsylvania law required CYS to file a dependency petition within 48 hours of the initial hearing, see 23 PA. CONS. STAT. ANN. § 6315(d), CYS did not file a petition until December 29, 2008. The petition was signed by Ms. Germond, an administrator of CYS.

The adjudicatory hearing, at which Judge Michael F.X. Coll of the Court of Common Pleas presided, was originally scheduled to commence on January 13, 2009, but began on April 22, 2009 and continued on June 2, July 8, and August 21, 2009. Throughout this time, Mrs. Dennis[2] was permitted to attend all of B.D.'s medical and therapy appointments and have supervised weekly one-hour visits with him. At the

---

[1] A placement is designated as "medical foster care" when the child has significant medical needs that will need specialized care. The foster parents are compensated differently and may have specialized training.

[2] Mr. Dennis was criminally charged in connection with B.D.'s injuries and was not permitted to visit with B.D. as a condition of his bail. The criminal charges were ultimately resolved by Mr. Dennis's participation in an Accelerated Rehabilitative Disposition Program. As part of the program, Mr. Dennis was not required to plead guilty to the charges and they were dismissed upon his completion of the program.

hearing, counsel for Mrs. Dennis asked the judge to permit more visitation with B.D. The judge stated that he would consider the request at the hearing's conclusion. The Dennises presented several medical experts at the hearing who offered alternate explanations for B.D.'s injuries, including birth trauma and congenital rickets. Ultimately, on August 21, 2009, the court determined that child abuse was not proven by a preponderance of the evidence or by clear and convincing evidence. The court dismissed the dependency petition, and B.D. was immediately returned to Mrs. Dennis.

On November 19, 2010, the Dennises filed a lengthy civil complaint. The District Court dismissed certain of the counts and defendants from the case, while others were later dismissed on consent of the parties. Cross motions for summary judgment were filed, and on June 14, 2013, in a 78-page opinion, the Court granted summary judgment in favor of defendants on all remaining counts.

On appeal, the Dennises contend that the District Court erred in granting summary judgment to defendants on their procedural and substantive due process claims. They argue that (1) CYS denied them a pre-deprivation hearing and purposefully delayed the request for protective custody until the morning B.D. was released from the hospital; (2) CYS obtained protective custody by making misrepresentations in the ex parte memorandum submitted to Judge Fitzpatrick, in retaliation against Mrs. Dennis for her belief in Mr. Dennis's innocence; (3) CYS failed to file the dependency petition within 48 hours after the initial hearing, resulting in a violation of the Dennises' rights; (4) the Court erred in finding that actual damages are required to maintain a due process action;

5

and (5) CYS failed to give Mrs. Dennis more visitation or place B.D. with her, in retaliation for her support of Mr. Dennis.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the Court's decision to grant summary judgment, and view the facts in the light most favorable to the parents. B.S. v. Somerset Cnty., 704 F.3d 250, 260 (3d Cir. 2013).

## III.    Analysis

To state a claim under 42 U.S.C. § 1983 for deprivation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). In Mathews, the Supreme Court held that in determining what process is due in a given situation, we are to weigh:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

6

424 U.S. at 335. In assessing whether parents have received procedural due process where a child has been removed from their care, we have recognized that the private interest "springs from the parent-child relationship," and that, as the Supreme Court has held, there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child." Miller v. City of Phila., 174 F.3d 368, 373 (3d Cir. 1999) (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982)). "This interest, however, must be balanced against the state's interest in protecting children suspected of being abused." Id. Moreover, because the interpretation and application of the Due Process Clause are "intensely practical matters," see Goss v. Lopez, 419 U.S. 565, 578 (1975), we "must consider" the results that our ruling will have on other similar proceedings. Miller, 174 F.3d at 373.

We have recognized that the interest of parents in the care, custody, and management of their children is an interest that is also protected by the substantive due process component of the Fourteenth Amendment. Id. at 374. A substantive due process right, however, is "violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) (internal quotation omitted). For liability to attach in a situation where a social worker acts to separate parent and child, "the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" Miller, 174 F.3d at 375-76.

7

### A. Procedural Due Process Claim Regarding the Ex Parte Proceeding

The Dennises contend that their procedural due process rights were violated by the County, Ms. Wertz, Ms. McGettigan, and Ms. Giancristiforo because they were not provided with a pre-deprivation hearing before B.D. was placed in foster care upon his discharge from the hospital. Because CYS knew in advance that it would seek protective custody of B.D., the parents contend that it was improper for CYS to seek an "emergency" ex parte order for protective custody on the day of his release.

The District Court correctly held, however, that the County's failure to provide the parents with a pre-deprivation hearing did not amount to a violation of procedural due process because a post-deprivation hearing was held within 72 hours. As we have held, "[i]nitiating child custody proceedings by *ex parte* orders is generally constitutional if a prompt post-deprivation hearing is held." See Miller, 174 F.3d at 372 n.4. The Due Process Clause requires "the opportunity to be heard at a meaningful time and in a meaningful manner," which was provided to the Dennises here. See Mathews, 424 U.S. at 333 (internal quotation marks omitted).[3] In any event, the individual defendants were properly accorded absolute immunity with respect to this claim, in which the Dennises seek to impose liability for the employees' conduct in formulating and presenting

---

[3] In depositions, the CYS defendants consistently testified that it is generally the practice of CYS not to petition for protective custody while a child is hospitalized with severe injuries because the hospital is considered a safe environment and because of the uncertainties about a child's prognosis prior to release. A ruling in the Dennises' favor would require CYS to petition for custody as soon as it knows it will oppose a child's return home after a hospitalization, even while the child is still hospitalized, despite the fact that the hospital provides a safe environment and, in some cases, the child's release is uncertain.

recommendations to the court. See B.S., 704 F.3d at 265; Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 495-96 (3d Cir. 1997) (holding that child welfare employees "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings"). On appeal, the Dennises do not challenge the Court's determination with respect to absolute immunity, and we need not address it further.

**B.      Substantive Due Process Claims Regarding the Ex Parte Proceeding**

Next, the Dennises argue that the County, Ms. Wertz, Ms. McGettigan, and Ms. Giancristiforo interfered with their fundamental right to control and direct the care of their son when those defendants refused to place B.D. with the Stevensons upon his release from the hospital, as his parents had requested. They also claim that defendants violated their substantive due process rights when they misrepresented in the ex parte memorandum submitted to Judge Fitzpatrick that there were no kinship resources available to care for B.D., that reasonable efforts had been made to prevent placement, and that medical foster care was needed. The Dennises argue that defendants made these misrepresentations in retaliation for Mrs. Dennis's and the Stevensons' belief in Mr. Dennis's innocence.[4]

---

[4] The Dennises also contend that by proceeding ex parte, the County defendants deprived them of the right to challenge the court's finding that "reasonable efforts" had been made to prevent the placement of B.D. in foster care. (See App. at 578.) Because Judge Fitzpatrick's order stated that reasonable efforts had been made to prevent placement of B.D., the parents state that Pennsylvania law prevented them from asking the Master to revisit that issue at the 72-hour hearing. See 55 Pa. Admin. C. § 3140.111(B)(1)(iv). Both parties appear to acknowledge that the Master lacked the authority to place B.D.

The Dennises' claims against the County fail because, as the District Court recognized, and as the Dennises do not challenge on appeal, they set forth no evidence to establish (1) that the alleged misrepresentations in the ex parte memorandum constituted policy or custom of the County or that the statements were made by a policy-making official, or (2) that it was the policy of the County to require a full home study of the parents' preferred caregivers when the parents and the preferred caregivers maintain the parents' innocence. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (holding that a municipality can only be held liable under § 1983 "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom") (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978)).

Even if we concluded that the Dennises set forth sufficient facts to establish that the County acted in conformance with an established policy or custom, we would agree with the District Court's conclusion that neither the representations in the ex parte memorandum nor the decision to require a full home study of the Stevensons prior to placement "shock the conscience." (See App. at 362-63 n.79, 363-64.) We also agree with the Court's conclusion that the individual CYS defendants are absolutely immune from liability for their conduct in presenting recommendations to the court.

with the Stevensons instead of other foster parents. While this could be construed either as a procedural or substantive due process claim, the crux of the argument is that defendants violated the parents' constitutional rights by facilitating the placement of B.D. with foster parents other than the Stevensons, which we construe to be a substantive due process claim.

10

## C.    Procedural Due Process Claim Regarding the Dependency Petition

The Dennises contend that the District Court erred in determining that the failure of CYS to file the dependency petition within 48 hours of the initial hearing did not violate their constitutional right to procedural due process.  As the Court correctly observed, however, the dependency petition was filed 10 days in advance of the scheduled adjudicatory hearing, providing the parents with adequate notice of the allegations.  Although the petition was not filed in strict compliance with the time required by state law, the question of "what process is due" for purposes of the Due Process Clause is a matter of federal constitutional law, not state law.  Cf. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).[5]

The Dennises also argue that the District Court erred when it held that they needed to prove actual damages in order to prevail on this claim.  While they are correct that nominal damages may be appropriate to remedy a violation of procedural due process, see B.S., 704 F.3d at 273, we need not reach the issue of damages because we conclude, for independent reasons, that no procedural due process violation occurred.

## D.    Substantive Due Process Claim Regarding Visitation

Finally, the Dennises contend that the District Court erred in granting summary judgment on their claim that the County violated their substantive due process rights by

---

[5] The District Court also held, and the Dennises do not challenge on appeal, that they failed to establish that the defendants' failure to comply with state law resulted from any policy or custom of the County, as required for municipal liability, and failed to establish that Ms. Germond (the only individual defendant against whom this claim was asserted) was responsible for the delay in filing the petition.

11

refusing to allow Mrs. Dennis more than one hour per week of visitation while the dependency proceeding was pending, attributing this decision to "Defendant" Beth Prodoehl, an employee of CYS. Ms. Prodoehl, however, was not named as a defendant with respect to this count (Count V of the Amended Complaint), and at oral argument on the parties' cross motions for summary judgment, the Court denied the parents' oral motion to amend Count V to add Ms. Prodoehl as a defendant.

In any case, the District Court did not err in concluding that the parents failed to demonstrate that the County acted arbitrarily or in a way that "shocks the conscience" by failing to recommend or permit additional visitation for Mrs. Dennis. There was no evidence that CYS acted arbitrarily or maliciously to limit Mrs. Dennis's visitation.[6] Contrary to the Dennises' assertions on appeal, CYS had a reasonable basis to believe that B.D. needed to be protected from Mrs. Dennis, including the fact that she continued to insist that the injuries were not caused by abuse despite the fact that CYS had medical evidence to the contrary. In addition, both Judge Coll and the Guardian Ad Litem took the position that B.D. should not be returned to Mrs. Dennis's care until completion of the adjudicatory hearing. The Court also did not err in concluding that the fact that Mrs. Dennis maintained her own and her husband's innocence was not an arbitrary or irrelevant factor for CYS to consider in evaluating visitation, given the concern that Mrs. Dennis might fail to protect B.D. from Mr. Dennis if granted unsupervised visitation.

---

[6] Indeed, Pennsylvania law required that Mrs. Dennis receive biweekly visitation, see 55 PA. ADMIN. C. § 3130.68, but CYS afforded Mrs. Dennis weekly visitation as well as the opportunity to attend all of B.D.'s numerous medical and therapy appointments.

## IV. Conclusion

We will affirm the order of the District Court granting summary judgment.