PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2217

_____

JASON MOSTAFA ALI,
                                    Appellant

v.

WOODBRIDGE TOWNSHIP SCHOOL DISTRICT;
WOODBRIDGE BOARD OF EDUCATION; GLENN
LOTTMAN, individually and in his official capacity as
Principal; ROBERT ZEGA, individually and in his official
capacity as Superintendent of Schools, JOHN DOES 1-10,
fictitious designations

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. Action No. 2-17-cv-02210)
District Judge: Hon. Madeline C. Arleo

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 14, 2020

_____

Before: JORDAN, GREENAWAY, JR., and
KRAUSE, *Circuit Judges*.

(Opinion Filed: April 22, 2020)

Alyssa Chabak, Esq.
Nicholas F. Pompelio, Esq.
DiFrancesco Bateman Coley Yospin Kunzman Davis &
Lehrer
15 Mountain View Boulevard
Warren, NJ 07059
        *Counsel for Appellant*

Eric L. Harrison, Esq.
Leslie A. Koch, Esq.
Methfessel & Werbel
2025 Lincoln Highway
Suite 200
Edison, NJ 08818
        *Counsel for Appellees*

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

At times, there are nuances that arise from history that create equivocation in analyzing how, why, and when certain historic events have occurred. There are no nuances to be discerned regarding the Holocaust. It is a historic fact. That

tragic event in human history along with the 9/11 terrorist attacks lie at the center of this matter.

Plaintiff-Appellant Jason Mostafa Ali is of Egyptian descent and identifies as a non-practicing Muslim. He alleges he was wrongfully terminated from his high school teaching position on the basis of his race, ethnicity, and religion. Although Ali's deposition testimony states that his supervisor made some disparaging remarks about Ali's race, Ali is not able to show that his teaching anti-Semitic views to his students was a pretext for discrimination that led to his termination. We will therefore affirm the District Court's grant of summary judgment in favor of Defendants-Appellees.

## I.     BACKGROUND

Plaintiff-Appellant Jason Mostafa Ali was employed as a non-tenured history teacher at Woodbridge High School from September 2015 to September 2016.  In May 2016, History Department Supervisor Matthew Connelly received internal complaints about Ali's instruction on the Holocaust.  One English teacher reported to Connelly that "her students were questioning historical accounts of the Holocaust, opining that 'Hitler didn't hate the Jews,' that statistics on the death counts were 'exaggerated' and that [the students] 'got the information from their world history teacher, Mr. Ali.'"  App. 109.  Students' written assignments confirmed the English teacher's accounts.  One student wrote in a paper submitted to Ali's class that "Adolf Hitler . . . is looked at as a bad guy but in reality brought Germany out of its great depression."  App. 110.  Another of Ali's students expressed a belief that "what they claim happened in the concentration camps did not really happen" and that "Jews . . . had a much easier and more enjoyable life in the camps."  App. 6.

Around the same time, Ali had prepared and presented a lesson on the terrorist attacks that occurred on September 11, 2001.  The lesson plan, which Connelly had approved, required students to read certain online articles translated by the Middle Eastern Media Research Institute ("MEMRI").  Ali posted links to these articles on a school-sponsored website so students could access them.  The linked articles were entitled, "Article in Saudi Daily: U.S. Planned, Carried Out 9/11 Attacks—But Blames Others for Them" and "Egyptian Daily: U.S. Planning 9/11 Style Attack Using ISIS in Early 2015—Like it Did Using Al-Qaeda in 2001."  App. 9.  The MEMRI articles also contained links to other articles and video clips, including a link to an article titled "Saudi Scholar Abdailah Al-

4

Yahya: The Jews are Like a Cancer, Woe to the World if they Become Strong." *Id*.

On September 28, 2016, a television reporter questioned Woodbridge High School Principal Glenn Lottman about the links Ali had posted on the school's website. The same news station also questioned Superintendent of Woodbridge Schools Robert Zega about the articles. Zega responded, among other things, that the School District would investigate the matter and "if warranted . . . the teacher [would] be disciplined severely." *Id*.

That same day, Lottman directed Ali to remove the MEMRI links from the school's website and sent Ali home. The following morning, Ali met with Zega, Lottman, and Connelly. At the conclusion of the meeting, Ali was given a letter advising him that his employment was terminated effective that day. The Board of Education approved Ali's termination at its next meeting.

In March 2017, Ali filed a fifteen-count complaint in the Superior Court of New Jersey against Woodbridge Township Board of Education, Woodbridge Township School District, Zega, and Lottman (collectively, "Defendants"). He alleged that during his employment, Lottman referred to him as "Mufasa" or "Mufasa Ali" based on Ali's middle name, Mostafa, and in reference to a character from the Lion King. App. 11. Ali also stated that Lottman once asked Ali if "they had computers in Egypt" and had greeted Ali on two occasions with "Hey Arabia Nights" and "Hey, Big Egypt." *Id*. Ali further alleged that other teachers' characterizations of him as "anti-Semitic," "unpatriotic," and a "conspiracy theorist" were related to these disparaging comments regarding Ali's ethnicity. *Id.* He also stated that Zega, Lottman, and Connelly

5

made similar remarks about his ethnicity during the meetings that occurred on September 28 and 29, 2016, resulting in Ali's termination.

Based on these allegations, Ali claims that Defendants violated the New Jersey Law Against Discrimination ("NJLAD") and 42 U.S.C. § 1981 by terminating his employment on the basis of race, religion, or perceived religion, and contends that Defendants violated the NJLAD by subjecting him to a hostile work environment. Ali also maintains that Defendants violated his rights to free speech and academic freedom under the First Amendment and that Defendants made statements to the press that defamed him.[1]

Defendants removed the case to federal court and the District Court granted summary judgment in favor of Defendants on each of these claims. This timely appeal followed.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction was proper pursuant to 28 U.S.C. § 1367. "We have

---

[1] The District Court also granted summary judgment in Defendants' favor on Ali's Consolidated Omnibus Budget Reconciliation Act ("COBRA") claim. The District Court denied summary judgment to Defendants on Ali's New Jersey Open Public Meeting Act ("OPMA") claim, but declined to exercise supplemental jurisdiction and remanded the claim to New Jersey Superior Court for further proceedings. Ali does not raise the COBRA claim or the OPMA claim on appeal.

jurisdiction under 28 U.S.C. § 1291 to review the District Court's grant of summary judgment." *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 95 n.7 (3d Cir. 2009).

Our review is plenary, and we apply the same standard as the District Court. *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014). Under that standard, summary judgment is appropriate only if, construed in the light most favorable to the non-moving party, the record shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. *See Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017); Fed. R. Civ. P. 56(a). A fact is only material if it might affect the outcome of the suit under the governing law. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

## III.    ANALYSIS

Ali appeals the District Court's grant of summary judgment in favor of Defendants on his NJLAD and § 1981 discrimination claims, NJLAD hostile work environment claim, NJLAD aiding and abetting claim, state and federal defamation claims, and his First Amendment claims. Because Ali is unable to show that there is a genuine dispute of material fact to be resolved at trial, we will affirm the District Court.

### A.    NJLAD Discrimination Claims and 42 U.S.C. § 1981 Claim

NJLAD makes it unlawful for an employer to discharge an employee on the basis of race, national origin, religion, and creed. N.J. Stat. Ann. § 10:5-12(a). Section 1981 of Title 42 of the United States Code also prohibits employment discrimination on the basis of race and national origin. *See St.*

*Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987). Claims brought under NJLAD and § 1981 are analyzed under the same framework. *See Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 906–07 (N.J. 1990).

Discrimination claims brought under both NJLAD and 42 U.S.C. § 1981 are subject to the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (finding that the plaintiff must establish "(1) that s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to . . . retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination"). Once a plaintiff meets the initial burden of production of making out a prima facie case of discrimination, the burden shifts to the defendant-employer to articulate legitimate, non-discriminatory reasons for the employment decision. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). Finally, the burden of production shifts back to the plaintiff, who must show through direct or circumstantial evidence that the legitimate, non-discriminatory reason given is merely pretext and the protected status of the plaintiff was the determinative factor of the adverse employment action. *See Makky*, 541 F.3d at 214–20.

The District Court held that Ali's NJLAD and § 1981 claims for discrimination on the basis of race, religion, or perceived religion could not survive summary judgment because Ali had not presented evidence raising a genuine dispute of material fact that Defendants' reasons for Ali's termination were pretext for discrimination. We agree.

Defendants proffered three non-discriminatory reasons for Ali's termination: (1) Ali disseminated links to anti-Semitic online articles through the school's official channels; (2) Ali expressed no remorse for this conduct; and (3) Ali's history of teaching Holocaust denial theories to his students. Ali testified in his deposition that on September 9, 2016, Connelly had seen copies of the MEMRI articles containing anti-Semitic references included in his lesson plan and nevertheless approved the lesson plan. He argues that Connelly's approval casts doubt on the legitimacy of Defendants' first rationale for terminating Ali. But even if Connelly had permitted the inclusion of the MEMRI articles in the lesson plan, Connelly's approval neither precluded Defendants from terminating Ali for posting links to anti-Semitic material nor does it raise an inference that Defendants' rationale for termination is a pretext for discrimination. Moreover, Zega's statement to the reporter on September 28, 2016, the day before Ali's termination, that "the teacher [would] be disciplined severely" shows that Defendants anticipated disciplining Ali based on Ali's posting of the MEMRI links, not for purported discriminatory reasons.

Importantly, Ali has not presented any evidence to challenge the notion that Defendants' second or third rationale was pretext, or that racial or religious discrimination more likely than not played a role in Defendants' decision to terminate Ali's employment. Ali does not deny that he never expressly apologized for his conduct during the meeting with Lottman and Connelly. Moreover, evidence such as the students' assignments and emails to Ali and Ali's deposition testimony show that Ali permitted conspiracy-theorist and Hitler-apologist presentations in his class and encouraged students to develop these opinions. Indeed, Ali did not dispute that he presented sources containing the conspiracy-theorist

9

and Hitler-apologist views that appeared in his students' work product.

Defendants presented at least two legitimate reasons for Ali's termination. Since Ali has not presented a genuine dispute of material fact that two of Defendants' rationales were a pretext for discrimination, we will affirm the District Court's grant of summary judgment on both the NJLAD and § 1981 discrimination claims.

## B. NJLAD Hostile Work Environment Claim

Under NJLAD, a plaintiff alleging a hostile work environment on the basis of race and national origin must show that the alleged conduct would not have occurred but for the employee's race or national origin, and that the conduct is so "severe or pervasive" that a reasonable person in that situation would believe that the "conditions of employment are altered and the working environment is hostile or abusive." *Taylor v. Metzger*, 706 A.2d 685, 688–89 (N.J. 1998) (citation omitted). This test "conforms to the standard for establishing workplace racial or gender harassment under federal Title VII law." *Id*. at 689.

Determining whether a work environment is hostile from the perspective of a reasonable person in that situation requires looking at the totality of the circumstances, including the frequency, severity, and nature of the subject conduct. *See Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 622 (N.J. 2002); *see also Taylor*, 706 A.2d at 692 (noting the alleged discriminatory conduct must be viewed in context from the perspective of a reasonable person from the particular racial or ethnic background who is similarly situated to the plaintiff). Utterances that are merely offensive do not rise to the level of

10

unreasonably interfering with an employee's job performance. *See Mandel v. UBS/PaineWebber, Inc.*, 860 A.2d 945, 955 (N.J. Super. Ct. App. Div. 2004). Moreover, it is "a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable [person situated as the claimant], make the working environment hostile." *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 455 (N.J. 1993).

At the outset, we find Ali's claims that Zega, Lottman, and other teachers had called Ali anti-Semitic, unpatriotic, and a conspiracy theorist bear a tenuous relationship to Ali's race. Since Ali has not shown that the other teachers would have made these remarks but for his race or national origin, this evidence fails the first prong of the NJLAD hostile work environment test. *See Shepherd*, 803 A.2d at 625 (noting the plaintiff must show "by a preponderance of the evidence that the impermissible conduct would not have occurred but for plaintiff's protected status") (citing *Lehmann*, 626 A.2d at 454).

However, the closer question is whether the alleged remarks that Lottman made prior to Ali's termination meeting are sufficiently "severe or pervasive" that a reasonable person who is Muslim and of Egyptian descent would find the conditions of employment altered. Viewing the facts in a light most favorable to the plaintiff, we nevertheless conclude that Ali has not presented evidence minimally necessary to form a hostile work environment claim.

Ali alleged that Lottman had greeted Ali on two occasions with "Hey Arabia Nights" and "Hey, Big Egypt," made a comment to Ali regarding computers in Egypt, and referred to him as "Mufasa" or "Mufasa Ali" based on Ali's middle name, Mostafa, and in reference to a character from the

11

Lion King. App. 11. Although these remarks are offensive, none of them rise to the level of severity that would alter working conditions. There is no evidence that Lottman made these comments in the presence of other employees with "an attitude of prejudice that injects hostility and abuse into the working environment" or that any of them were as severe as the use of an unambiguous racial epithet. *See Castleberry v. STI Grp.*, 863 F.3d 259, 265 (3d Cir. 2017) (holding that the use of an unambiguous racial epithet by a supervisor, immediately followed by a threat of termination, created a hostile work environment); *Taylor*, 706 A.2d at 693 (finding sufficiently severe a defendant's racist slur about and to a plaintiff-employee that was made in the presence of another supervisor and meant to humiliate the plaintiff).

Moreover, these were isolated incidents; Ali cannot show that Lottman's remarks were so pervasive that they altered the working environment. *See Woods-Pirozzi v. Nabisco Foods*, 675 A.2d 684, 693 (N.J. Super. Ct. App. Div. 1996) (concluding that sexist comments made "once or twice a week" over the course of one year was "pervasive enough to make a reasonable woman . . . believe that her work environment was hostile, abusive, intimidating, or offensive"). We will therefore affirm the District Court's grant of summary judgment to Defendants on the NJLAD hostile work environment claim.[2]

---

[2] Under NJLAD, it is unlawful for "any person, whether an employer or an employee . . . to aid, abet, [or] incite . . . the doing of any [unlawful discriminatory acts] or to attempt to do so." N.J. Stat. Ann. § 10:5-12(e). Having found that Ali has not presented sufficient evidence to create a genuine dispute of fact as to his NJLAD discrimination or hostile work

## C. Defamation, Libel, False Light/Invasion of Privacy Claims

A statement is defamatory when the statement harms the reputation of the plaintiff by hurting his image within his community and deterring others from associating with him. *See Ward v. Zelikovsky*, 643 A.2d 972, 978–89 (N.J. 1994); *see also* Restatement (Second) of Torts § 559. To bring a defamation claim under New Jersey law, a plaintiff must show: "(1) that defendants made a false and defamatory statement concerning [plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that defendants acted negligently or with actual malice." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011). Truth is therefore a defense in a defamation action. *Id.* In New Jersey, a defamatory statement can be expressed in both written and oral form. *See W.J.A. v. D.A.*, 43 A.3d 1148, 1153 (N.J. 2012).

Opinion statements are generally not defamatory because they reflect a person's state of mind. *See Ward*, 643 A.2d at 979. Determining if a statement is one of fact or opinion rests on the concept of verifiability, because if a statement cannot be proven true or false, it cannot be subject to liability. *See Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1137 (N.J. 1999).

Similarly, New Jersey recognizes "invasions of privacy involving publicity that unreasonably places the other in a false

---

environment claims, Ali has no basis for his NJLAD aiding and abetting claim. So, we will affirm the District Court on the aiding and abetting claim.

light before the public." *Romaine v. Kallinger*, 537 A.2d 284, 289 (N.J. 1988). Like defamation, "a fundamental requirement of the false light tort is that the disputed publicity be in fact false, or else 'at least have the capacity to give rise to a false public impression as to the plaintiff.'" *Id.* at 294 (citation omitted).

Ali asserts that several statements that Zega made during Zega's interview with the reporter were defamatory. Here, we agree with the District Court that at least two of Zega's comments that Ali refers to—that "[i]t's upsetting . . . that somebody would . . . distribute [the conspiracy theory messages in the MEMRI articles]" and that there was "no [excuse]" for posting the MEMRI articles—are statements of opinion, which are not actionable as defamation or false light/invasion of privacy. App. 207–08; *see Lynch*, 735 A.2d at 1137 (noting that "[l]oose, figurative or hyperbolic language is not likely to imply specific facts, and thus is not likely to be deemed actionable").

Similarly, Zega's comment that the posting of the MEMRI articles and the anti-Semitic statements and 9/11 conspiracy theories contained in those articles were "not something that the district agrees with in any way" is not subject to liability for the same reasons. App. 207–08.

To the extent that Ali argues that Connelly's approval of the 9/11 lesson plan contradicts Zega's statement, Ali has not presented evidence that Connelly represented the position of the District in approving Ali's lesson plan. In fact, Defendants' decision to terminate Ali for posting the MEMRI articles is further evidence that the School District did not support the views presented in those articles.

14

Finally, Zega's affirmation that Defendants took "swift action" to remove the links and that "the teacher [would] be disciplined severely," if warranted following an investigation, App. 207–08, is also not defamatory nor does it constitute false light/invasion of privacy because it is not false. Indeed, Defendants acted quickly in disciplining the teacher at fault; the same day that the reporter approached Zega, Lottman ordered Ali to remove the MEMRI links from the school's website and, following two meetings within two days, Defendants terminated Ali.

For these reasons, we will affirm the District Court.

### D.      42 U.S.C. § 1983—Defamation Claim

A defamation suit under 42 U.S.C. § 1983 may proceed "only if [the defamatory act] occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *See Clark v. Township of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 711–12 (1976)). However, Ali alleges only damage to his reputation without any concurrent violation of his constitutional rights. Since simple defamation alone is not a protected interest under the Due Process Clause, Ali cannot recover under § 1983. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 402–04 (3d Cir. 2000) (holding that harms to a plaintiff's future employment that flow from statements made by a former employer do not infringe upon a liberty interest protected by the Due Process Clause); *see also Clark*, 890 F.2d at 619.

### E.    42 U.S.C. § 1983—First Amendment Claims

To establish a First Amendment retaliation claim, a public employee must show "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *See Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Teachers do not have a protected First Amendment right to decide the content of their lessons or how the material should be presented to their students. *See Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488, 491 (3d Cir. 1998) (holding that "a public university professor does not have a First Amendment right to decide what will be taught in the classroom"); *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990) ("[N]o court has found that teachers' First Amendment rights extend to choosing their own curriculum or classroom management techniques in contravention of school policy or dictates.").

Ali alleges that posting links to MEMRI articles containing "alternative views" on the 9/11 attacks is protected by the First Amendment. But, based on our case law, Ali did not have a right to decide what would be taught in the classroom. *See Edwards*, 156 F.3d at 491 (noting that decisions of how and what may be taught in the classroom belong to the public school and not the professor). Hence, Ali posits insufficient evidence to withstand the grant of summary judgment on his First Amendment claims.

### IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's decision to grant summary judgment in favor of

16

Defendants on all of Ali's claims under NJLAD, § 1981, § 1983, and defamation under state law.