NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3206
_____

KAREN MALDONADO;
ANIBAL MALDONADO,
Appellants

v.

JESSICA SHAPIRO,
IN HER OFFICIAL AND INDIVIDUAL CAPACITIES;
JAVIER AGUERO, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES;
ROYA PALLER, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES;
THOMAS MARCUCCI; STACIANN MARCUCCI; JESSICA GIBSON;
CITY OF PHILADELPHIA; CHRISTOPHER HERMANN
_____

On Appeal from the
United States District Court
for the Eastern District of Pennsylvania
(No. 2:18-cv-01492- JS)
District Judge: The Honorable Juan R. Sanchez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 25, 2022

Before: CHAGARES, *Chief Judge*, McKEE, and MATEY, *Circuit Judges.*

(Filed: February 8, 2022)

———————————
OPINION[*]
———————————

MATEY, *Circuit Judge*.

Karen Maldonado appeals the District Court's grant of summary judgment on her allegations against Roya Paller, a Philadelphia Department of Human Services ("PDHS") caseworker. But there are no material facts in dispute, or meritorious legal claims, so we will affirm the order of the District Court.

## I. BACKGROUND

In July 2016, Maldonado's seventeen-year-old daughter, I.M., ran away from home and was picked up by her uncle, Christopher Hermann. Hermann brought I.M. to PDHS, where I.M. alleged Maldonado had abused her. Maldonado agreed to let I.M. temporarily reside with Hermann if I.M. did not associate with Staciann Marcucci and Thomas Marcucci. The Marcuccis owned a dance studio where I.M. was a student and where Maldonado feared I.M. was being abused.

PDHS assigned the Maldonado investigation[1] to Roya Paller. Paller was familiar with the dance studio, and raised the issue with her supervisor, who confirmed she could

———————————

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

[1] The investigation was required by Pennsylvania law. Investigation of reports of suspected child abuse, 55 Pa. Code § 3490.55 (1999). Two months earlier, PDHS conducted a separate abuse investigation of Maldonado, but concluded the allegations lacked merit.

work the case. Paller later closed her investigation, finding I.M.'s claims of abuse "[u]nfounded." (Supp. App. at 331.)

Hermann petitioned for full custody of I.M., leading to a hearing in the Philadelphia Court of Common Pleas. At the hearing, I.M. testified that Maldonado threatened her, and that she feared for her life. The Court placed I.M. in protective custody with PDHS. At a subsequent hearing, a court found it in I.M.'s best interest to remain with Hermann. I.M. was emancipated shortly after she turned eighteen.

Maldonado filed suit against several defendants, asserting civil rights and tort claims. The District Court granted all the Defendants summary judgment. Maldonado appeals that decision only as to Paller.[2] Finding no error, we will affirm.

## II. DISCUSSION

We exercise plenary review of a district court's grant of summary judgment. *See Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 179 (3d Cir. 2020). Construing the record in the light most favorable to the non-moving party, summary judgment is appropriate if there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* We consider whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] The District Court had jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1367(a), and we have jurisdiction under 28 U.S.C. § 1291.

## A.    Due Process

Maldonado first alleges the District Court erred in granting summary judgment as to her § 1983 claim, which alleges Paller interfered with her fundamental right to the custody and care of her daughter. *See Troxel v. Granville*, 530 U.S. 57, 72–73 (2000). As we have explained, a child welfare worker violates parental rights when the worker's actions "exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller v. City of Philadelphia*, 174 F.3d 368, 375–76 (3d Cir. 1999). And there must be a "causal link between an alleged unconstitutional act and the harm that a plaintiff claims followed it." *Id.* at 374 n.5.

Maldonado makes three arguments. First, an alleged inconsistency in Paller's findings.[3] Second, that Paller's investigation was tainted by a conflict of interest. Third, that Paller misrepresented the nature of her investigation, and then pressured Maldonado to accept her recommendations.

But none of these arguments plausibly establish the necessary causal link between Paller's actions and Maldonado's loss of custody of I.M. *See Miller*, 174 F.3d at 375–76. Before Paller's involvement, I.M. ran away from home and reported abuse to PDHS. Maldonado also agreed to let I.M. temporarily reside with Hermann. I.M.'s position

---

[3] Maldonado claims Paller found "emotional abuse," but the record and briefing do not support that assertion. Paller sent a letter to Maldonado informing her that the investigation had concluded and the allegations of abuse were "[u]nfounded." (Supp. App. at 331.) Paller later testified that the investigation was closed only as to physical abuse, not mental abuse. But her testimony did not contain any finding of emotional or mental abuse.

remained the same throughout the custody hearings where she continued to accuse Maldonado of abuse, testimony the hearing Judge found "very credible" and that it was "in the best interest of the child to remain with her uncle in Maryland." (Supp. App. at 44.) Given I.M.'s consistent behavior before, during, and after Paller's involvement with the case, Maldonado cannot show Paller caused a violation of her parental rights.[4]

Nor does Paller's supposed conflict of interest shock the conscience. While Paller's children attended functions at the dance studio, Paller had no relationship with the owners. And Paller disclosed the issue to her supervisor and received approval to remain involved. A modest, tangential connection such as this does not shock the conscience. *See Miller*, 174 F.3d at 377.

Maldonado also claims Paller tricked her into agreeing to a temporary plan placing I.M. with Hermann for one month. Maldonado claims Paller falsely told her the plan was temporary. But as the District Court found, the plan was temporary, and expired at the end of the month. Hermann's subsequent, separate custody application does not change the accuracy of Paller's representation.[5]

---

[4] For this reason any disagreement about Paller's testimony fails to rise to the level of a disputed material fact. Maldonado claims Paller "falsely testified" (Opening Br. at 11,) at a September 16 custody hearing, a charge Paller does not answer. But the alleged injury—Maldonado's loss of I.M.—was not caused by Paller's testimony. Both parties agree that the Judge initially granted custody to Maldonado after Paller's testimony. It was only after I.M. amplified her testimony and alleged Maldonado threatened her physically that the Judge changed the order and referred I.M. to dependency court. As a result, Paller's testimony did not materially influence the proceedings and cannot be a basis for challenging the District Court's grant of summary judgment.

[5] This conclusion also precludes Maldonado's claim of fraud based on the same allegation.

Finally, Maldonado claims that Paller encouraged Hermann to file for custody. Even assuming that is true,[6] it does not shock the conscience given I.M.'s consistent claims of abuse.

## B.    Intentional Infliction of Emotional Distress

Pennsylvania defines intentional infliction of emotional distress as "extreme and outrageous conduct intentionally or recklessly caus[ing] severe emotional distress to another." *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998) (citation and quotations omitted). The conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 754 (citation and quotations omitted). That high bar is not satisfied here.

First, nothing in the record establishes any conscience-shocking behavior by Paller. *See Dennis v. DeJong*, 953 F. Supp. 2d 568, 604 (E.D. Pa. 2013), *aff'd*, 557 F. App'x 112 (3d Cir. 2014) (because misrepresentations about child's injury did not create substantive due process claim, they could not show intentional emotional distress). And second, Paller's conduct did not cause Maldonado's distress, as I.M.'s custody turned on I.M.'s own testimony. That testimony, and not other factors, resulted in the court's custody decision.

### III. CONCLUSION

For these reasons, we will affirm the order of the District Court.

---

[6] The only evidence Maldonado cites is Hermann's testimony in which he says he was "advised by [P]DHS . . . [that he] should file." (Supp. App. at 350.)