**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2373
_____

JAMAR COLEY,
                    Appellant

v.

NEW JERSEY TRANSIT CORPORATION; DAMIAN HALL
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:17-cv-05585)
U.S. District Judge: Honorable Michael A. Shipp
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 6, 2022
_____

Before: HARDIMAN, SHWARTZ, and NYGAARD, <u>Circuit Judges</u>.

(Filed: October 6, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Jamar Coley appeals the District Court's order granting summary judgment to Damian Hall, his former supervisor, on Coley's employment discrimination claims. Because no material disputes of fact exist, and Hall is entitled to judgment as a matter of law, we will affirm.

I

A

Coley, an African-American, worked for New Jersey Transit Corporation. Since 2001, Coley served as a bus repairman. He was also the designated "pull-out man" during certain shifts, which required him to remove a cash vault from the last bus to return to the station and deliver it to a depot master. Hall, a Caucasian, served as Coley's direct supervisor.

In 2010, Hall witnessed a group of New Jersey Transit employees, including Coley, sleeping on buses while on duty. Hall recommended that these employees be discharged, but they were all reinstated at the second step of the disciplinary process.[1] At the time of Coley's reinstatement, he had a disciplinary record and was told that he would be discharged if he was again found sleeping on the job.

---

[1] Under the Collective Bargaining Agreement ("CBA") between Coley's union, the Division No. 540, Trenton, New Jersey Amalgamated Transit Union (the "Union"), and the New Jersey Transit Corporation, the process for a disciplinary matter consists of a three-step hearing process. After the third step, the Union has the option to pursue arbitration.

Coley asserts that Hall discriminated against African-American employees, including Coley.  Specifically, Coley asserts that Hall (1) disciplined Caucasian employees for sleeping during shifts but terminated African-American employees for the same conduct; (2) issued attendance occurrences[2] to Coley but not Caucasian employees for identical conduct; (3) permitted a Caucasian employee to leave during fifteen-minute breaks but did not permit Coley to do the same; (4) issued written warnings to two Caucasian employees for taking unauthorized breaks but terminated an African-American employee for the same conduct; (5) provided Caucasian employees but not Coley and other African-American employees additional opportunities for overtime;[3] (6) allowed only Caucasian employees to smoke cigarettes on company property; and (7) required Coley to take an exam to secure a promotion, but did not require the same of Caucasian employees.

In December 2014, Coley filed a complaint with the New Jersey Transit Equal

---

[2] The CBA describes the attendance policy.  The policy requires, among other things, that employees be on time when reporting to work and returning from lunch breaks.  A violation of the attendance policy is referred to as an "occurrence" and is assessed automatically by the company's computer system when an employee scans his employee identification card in the time clock on premises.  A supervisor on duty then determines whether the occurrences should be entered into the system.  Once a certain number of occurrences are accrued, the employee is subject to discipline.

[3] The CBA also includes an overtime policy, which provides that overtime work should first be offered to employees who are actually performing the work prior to the overtime assignment, and then be offered by seniority.  Coley was offered overtime on a number of occasions and periodically accepted overtime.  Coley asserts, however, that Hall regularly provided only Caucasian employees a special option to accrue two extra hours of overtime before a shift.

Opportunity and Affirmative Action ("EO-AA") office, alleging, among other things, that he was disciplined for lateness and not granted overtime because of his race. Coley thereafter supplemented his EO-AA complaint, alleging that Hall and another foreman subjected him to disparate treatment in connection with his request for a promotion.

In 2015, Coley was again reported for sleeping on the job. Coley was serving as the assigned "pull-out man" during a 1:00 A.M. to 8:30 A.M. shift. At approximately 2:15 A.M., Coley's co-workers could not locate him to provide him with the tool to pull the cash vault from the bus. After paging him several times between approximately 2:15 A.M. and 2:45 A.M., and receiving no response, Steve Campbell, the depot master, and Dave Calabrese, a foreman, searched for Coley and found him at approximately 2:50 A.M. purportedly sleeping in a parked bus with the internal lights off.[4]

Coley received three hearings after this incident. Hall served as the hearing officer at Coley's first step hearing and recommended Coley's discharge "based on the statements of the witnesses, the video in support of the statements [and] his over all [sic] record." App'x 739, 745. The hearing officers at Coley's second and third step hearings

_____

[4] Coley and Hall's accounts differ as to whether Coley was actually sleeping on the bus and whether he admitted to sleeping. Coley asserts that he was not sleeping and had not admitted to doing so, and states that he was instead awake and had been checking messages on his phone for approximately five minutes at the time that Campbell and Calabrese observed him. Hall asserts that Coley approached him the morning of the write-up and confirmed that Coley was sleeping, though later denied that he was sleeping during the first step hearing. Regardless, both parties agree that Campbell and Calabrese reported that Coley was sleeping on the bus and that their reports were the basis for Hall's termination decision.

4

upheld Hall's discharge recommendation. The Union declined to challenge the discharge decision.

B

Coley sued Hall for discrimination and retaliation under 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, et seq.[5] After discovery, Hall moved for summary judgment. The District Court granted the motion because Coley failed to (1) "provide[] supporting evidence to rebut the evidence proffered by [Hall] that shows [Coley] did not in fact receive disparate treatment as an employee at [New Jersey Transit]," and (2) "satisfy his burden of showing that a genuine dispute exists as to whether he received disparate treatment because of his race." Coley v. N.J. Transit, No. 17-CV-05585, 2021 WL 2581920, at *3 (D.N.J. June 23, 2021).

Coley appeals.

---

[5] New Jersey Transit was initially named as a defendant but the claims against it were dismissed for lack of jurisdiction. Coley does not appeal that ruling.

II[6]

A

Coley's § 1981 and NJLAD claims are both subject to the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Ali v. Woodbridge Twp. Sch. Dist., 957 F.3d 174, 180 (3d Cir. 2020).[7]

We assume that Coley has established a prima facie case of discrimination and note that Coley does not dispute that New Jersey Transit prohibits sleeping on the job and that this was the reason given for his termination. Thus, Hall's reliance on this policy provided a legitimate, non-discriminatory reason for the employment decision.

---

[6] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review "of a grant of summary judgment is plenary, and the record is judged by the same standard district courts use." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citation omitted). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[7] Coley asserts that because the District Court did not explicitly apply McDonnell Douglas or analyze Coley's retaliation claim, we must reverse and remand. Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination, which requires that a plaintiff show: (1) he is a member of a protected class; (2) he was qualified for the position he sought to retain; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred "under circumstances that raise an inference of discriminatory action[.]" Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); see also Ali, 957 F.3d at 180 (citation omitted). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to show it had a legitimate nondiscriminatory reason for the adverse employment action. Ali, 957 F.3d at 180. If the employer makes such a showing, then the employee has the burden to prove that the employer's reason was pretextual. Id. The District Court's analysis reflects the McDonnell Douglas steps. Coley, 2021 WL 2581920, at *2-3. In any event, "[w]e may affirm the District Court on any grounds supported by the record." Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000) (citation omitted).

As a result, we will examine whether Coley established "through direct or circumstantial evidence that the legitimate, non-discriminatory reason given is merely pretext and the protected status of the plaintiff was the determinative factor of the adverse employment action." Ali, 957 F.3d at 180. To do so, Coley must either (1) submit evidence that "meaningfully throw[s] into question, i.e., [casts] substantial doubt upon" the employer's proffered reason, or (2) "come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Here, Coley has not shown pretext. First, Coley's efforts to cast doubt on the reason for his termination are unavailing. Coley points to inconsistencies in Campbell's and Calabrese's reports that he argues undermine Hall's reason for recommending termination. Material aspects of their reports, however, were corroborated. For instance, video evidence Hall reviewed showed Coley's co-workers attempting to page Coley several times before searching for him, and both Calabrese and Campbell reported finding Coley in a bus with the internal lights off. Thus, inconsistencies in their reports did not alter the reason Hall recommended termination.

Coley also does not assert that Calabrese and Campbell had discriminatory motives to make their reports, and Hall, the relevant decisionmaker during the first step hearing, had a basis to accept their reports. See id. at 766-67 (recognizing that a key

7

question is whether "the relevant decisionmaker" making an employment decision believed criticisms made by other staff members in complaints about the plaintiff "to be accurate and actually relied upon them, since only if [the plaintiff] can ultimately prove that [the decisionmaker] in fact did not rely upon them can [the plaintiff] show 'pretext'"). Even if Coley was not in fact sleeping, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999) (citation omitted).

Second, Coley has not provided sufficient evidence from which "a factfinder could reasonably conclude" that his race "more likely than not was a motivating or determinative cause" of his termination. Fuentes, 32 F.3d at 765. A plaintiff can show that an employer's proffered legitimate reason for the employment action was pretextual by, for example, "showing . . . that the employer treated other, similarly situated persons not of his protected class more favorably." Id. at 765. Coley has not provided any evidence of a similarly situated Caucasian employee who was (1) previously terminated and reinstated for sleeping on the job and warned that he would be automatically terminated if he was caught sleeping on the job again, (2) then purportedly caught sleeping on the job after the warning, and (3) not been recommended for termination by Hall.

Finally, Coley claims that Hall treated African-Americans differently in terms of attendance occurrences, breaks, overtime, smoking, and promotional exams. None of these events, even if true, provide "sufficient evidence from which a factfinder could reasonably conclude that" Coley's race was "more likely than not . . . a motivating or determinative cause" of Hall's recommendation to terminate Coley for sleeping at work. Id. Put simply, even if Coley is correct that there was different treatment in these areas, he has not asserted that the individuals who reported that Coley violated the no sleeping rule acted with discriminatory intent, and his purported violation of the rule was the reason for his termination.

For these reasons, Coley failed to establish pretext, and so we will affirm the District Court's order granting summary judgment in favor of Hall on Coley's discrimination claim.

B

Coley is correct that the District Court did not separately explain why it granted summary judgment in Hall's favor on his retaliation claim. We have the supervisory authority to remand to require the Court to provide an explanation for its ruling. Vadino v. A. Valey Eng'rs, 903 F.2d 253, 259 (3d Cir. 1990). We also have the discretion to address the issue without remanding. Caprio v. Bell Atl. Sickness & Accident Plan, 374 F.3d 217, 220 (3d Cir. 2004). One situation in which we need not remand is where, as here, briefing, a developed record, and the application of straightforward legal principles

9

permit us to review the ultimate disposition despite the absence of explicit reasons for the ruling. Cf. id. (remanding because the "complex matter" left questions as to the standard of review the district court exercised and the basis for the district court's assessment of the plaintiff's claim); Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1149 (3d Cir. 1993) (remanding because the district court's lack of explanation for the basis for summary judgment was not alleviated by the briefing on appeal).

To succeed on a retaliation claim under § 1981 and NJLAD, a plaintiff must show that: (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. See Est. of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010). Similar to the framework for a discrimination claim, if a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the employer to provide a "legitimate non-retaliatory reason" for the adverse employment action. Id. "If [the] employer advances such a reason, a plaintiff then must show that the proffered reason was a pretext for retaliation." Id.

Even if Coley established a prima facie case for retaliation, his retaliation claim fails for the same reason as his discrimination claim: there is no genuine issue of material fact that Hall's proffered reason for recommending Coley's termination—sleeping on the job—is pretextual. Coley's retaliation claim, therefore, also fails.

## III

For the foregoing reasons, we will affirm.