**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1497
_____

AMY BROWN,
　　　　　　　　Appellant

v.

AMETEK, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-01475)
U.S. District Judge:  Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 6, 2022
_____

Before:  SHWARTZ, MATEY, and FUENTES, <u>Circuit Judges</u>.

(Filed: December 7, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Amy Brown appeals the District Court's order granting summary judgment in favor of her former employer, AMETEK, Inc., on her employment discrimination claim. Because we conclude material disputes of fact exist, we will vacate the District Court's order.

I[1]

A

AMETEK, a manufacturing company, hired Brown in 2008 as a Manager, External Reporting, in its finance department. Two years earlier, AMETEK hired Robert Virelli as a Manager, Financial Reporting, in the same department. Each was promoted to Senior Manager in 2011. By 2017, each sought promotions to Director. In 2018, AMETEK promoted Virelli but not Brown.[2]

AMETEK represents, and Brown largely agrees, that promotion to Director requires, at a minimum, "exceptional performance beyond the day-to-day responsibilities and expectations of one's position," a strong work ethic, and a sense of professionalism. App. 258.

According to AMETEK, Brown and Virelli performed differently against these metrics. Virelli took on "substantial responsibilities beyond the regular scope of his

---

[1] Brown appealed only the portion of the order granting summary judgment to AMETEK on her discrimination claim based on AMETEK's failure to promote her to Director, External Reporting, so facts unrelated to that claim are not included.
[2] Virelli's promotion did not preclude Brown from being promoted at the same time or in the future.

position," App. 261, "distinguish[ed] himself" with his purchase accounting work, App. 524 at 81:1-4, and played an integral role in a project that involved the "most significant change to U.S. GAAP in more than a decade," App. 261, 527 at 108:6-22. By contrast, AMETEK asserts that Brown offloaded assignments and did not take on the special projects necessary for promotion to Director. For instance, Brown stopped managing AMETEK's 401(k) audits in the January 2017 reporting period because they conflicted with her other work and she considered working on both to be "too challenging," App. 470 at 157:15, and did not volunteer to lead an important project known as the "lease" project.

Brown asserts that AMETEK's failure to promote her was instead the result of gender bias. Brown contends that she expanded her responsibilities since her 2011 promotion and took on several special projects. For example, she points to various tasks in 2012 related to AMETEK's three-for-two stock split; her 2015 work on "the Charles Schwab stock plan system transition, an SEC Comment Letter response, the CBRE properties database implementation, and the Year End 2015 D&O Questionnaire PCAOB Rule 3526 Supplement"; her 2017 collaboration with senior management to "develop and implement a new Return on Tangible Capital (ROTC) calculation"; and her 2017 graduation from KPMG's Executive Leadership Institute for Women. App. 238-39. She also notes that she received positive performance reviews during this period.

Brown also asserts that she was rated as "promotable," App. 124-28, 135-36, 144-48, on her "Individual Development Plan/Career Development Plan" ("IDP/CDP") forms until August 2017, App. 280 at 94:12-17, which was a few months before Virelli was

3

promoted.[3]  Brown's direct supervisor, Jeffrey Stevens, testified that he rated Brown as "promotable" in 2017 and submitted this rating to his supervisors, Tom Montgomery and Bill Burke.  Brown's 2017 rating was thereafter lowered to "expandable," App. 130-31, but neither Montgomery nor Burke could recall why.  On the next year's IDP/CDP form, Brown was rated "promotable."  App. 135-36, 321 at 147:11-16.

B

Brown sued AMETEK, alleging gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").

After discovery, AMETEK moved for summary judgment, which the District Court granted because it concluded that Brown's evidence failed to show a disputed issue of material fact that AMETEK's legitimate nondiscriminatory reasons for not promoting her were a pretext.  See Brown v. AMETEK, Inc., No. 20-CV-01475, 2022 WL 716767, at *1, *5 (E.D. Pa. Mar. 10, 2022).  It found, among other things, that (1) there was nothing "untoward or unusual" in AMETEK's decision to downgrade Brown's 2017 evaluation from "promotable" to "expandable," (2) there was no "evidence that [the downgraded evaluation] formed the basis for the promotion decisions," and (3) Brown admitted in her deposition that she believed her managers at AMETEK thought her work was "not at director level."  Id. at *5.

---

[3] The IDP/CDP forms were part of the finance department's annual "[L]eadership [D]evelopment [R]eview" process, App. 296-97 at 75:18-76:9.  The forms include the following promotability ratings: (1) high potential, (2) promotable, (3) expandable, (4) in place, (5) too soon to tell, and (6) issue.  The IDP/CDP forms are distinct from annual performance reviews, which contain a narrative evaluation of performance in several categories and rate the performance in those categories on a scale of one to five.

Brown appeals.

## II[4]

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."[5]  42 U.S.C. § 2000e-2(a)(1).  We analyze discrimination claims involving indirect evidence, like the one here, using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Burton v. Teleflex Inc., 707 F.3d 417, 425-26 (3d Cir. 2013).

The McDonnell Douglas framework proceeds in three steps.  Because the District Court decided this matter based on step three, our analysis will focus there too, examining whether any material disputed facts exist as to whether AMETEK's proffered "legitimate, non-discriminatory reason[s] . . . [were] merely pretext and the protected status of the plaintiff was the determinative factor of the adverse employment action." Ali v. Woodbridge Twp. Sch. Dist., 957 F.3d 174, 180 (3d Cir. 2020).  To show pretext, Brown must either (i) submit evidence that "meaningfully throw[s] into question, i.e., [casts] substantial doubt upon, the [employer's] proffered reasons," or (ii) "come forward with sufficient evidence from which a factfinder could reasonably conclude that an

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction under 28 U.S.C § 1291.  Our review "of a grant of summary judgment is plenary."  Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

[5] Because the PHRA's standards are identical to Title VII's, Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000), we address Brown's Title VII and PHRA claims together.

5

illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

A reasonable factfinder could find that AMETEK's proffered reasons for not promoting Brown—that she offloaded tasks and did not take on special projects—were pretextual for two reasons. Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999) (explaining that summary judgment is inappropriate where "reasonable minds [could] conclude that the evidence of pretext is more credible than the employer's justifications"). First, the contemporaneous record undermines the reasons AMETEK's witnesses offered for their promotion decision. Brown's immediate supervisor rated her as "promotable" on her IDP/CDP forms for years 2015, App. 144-48, 2016, App. 124-25, 2017, App. 127-28, and 2018, App. 135-36. Others higher in the chain of command, however, downgraded her potential from "promotable" to "expandable" for 2017 without explanation, App. 130-31, just a few months before Virelli's promotion.[6] Montgomery could not explain why the downgrade was made and Burke specifically stated that he could not "recall that there was any particular individual reason" for this decision. App. 281-82 at 95:5-96:21. This unexplained downgrade around the time of Virelli's promotion presents a genuine dispute as to whether the proffered reasons for the decision

---

[6] A reasonable factfinder could find that the IDP/CDP forms, which explicitly rate AMETEK's employees as promotable or not were used to make the promotion decision because the IDP/CDP forms were produced as part of the finance department's annual "[L]eadership [D]evelopment [R]eview" process, App. 297 at 76:1-9, which suggests they were meant to identify the company's future leaders' suitability for promotion.

not to promote Brown were pretextual.[7] See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 310 (3d Cir. 2012) (noting that a trier-of-fact may give "little evidentiary weight" to the deposition testimony of a supervisor when the supervisor "contradicted herself on this very point," "couldn't recall" when the termination decision was made, and the testimony was the "only evidence" showing the termination decision was made before a particular date (emphasis omitted)).

Second, there is evidence from which a reasonable juror could find that AMETEK's explanation that it did not promote Brown because she offloaded tasks and failed to take on projects beyond her regular duties was pretextual. According to AMETEK, the only task that Brown offloaded was the 401(k) audits, which she stopped performing starting in the January 2017 reporting period. Brown's direct supervisor, Stevens, agreed to offload the audits, thereafter gave her a largely positive performance review for the period ending in December 2017, testified that he still considered her promotable in 2017, and included a "promotable" rating on her IDP/CDP form for the 2018 period. App. 135-36. Brown's reviews, which indicate that her supervisor still rated her highly after the apparent audit incident, are sufficient to create a material dispute of fact as to whether AMETEK's explanation that Brown offloaded tasks was

---

[7] Brown's subjective belief that her managers were acting in good faith when they decided not to promote her is irrelevant to the pretext inquiry. See Marra v. Phila. Hous. Auth., 497 F.3d 286, 307-08 (3d Cir. 2007) (holding that the plaintiff's testimony that his employer did not retaliate against him was irrelevant in light of evidence that the employer's stated reason for the adverse employment action was a pretext).

pretext.[8]  See Fasold v. Justice, 409 F.3d 178, 185-86 (3d Cir. 2005) (holding that the explanation that a detective was fired for failing to generate enough arrests and investigations was unworthy of credence because the detective's supervisor testified that he was "basically satisfied with the [detective's] number of arrests and investigations").

There is also a factual dispute about whether Brown took on special projects. Brown presented a two-page list of assignments she pursued at AMETEK that she claims constitute "special projects," App. 132-33, and Stevens confirmed that Brown did, in fact, work on the projects she identified.  AMETEK now baldly asserts that none of these projects were worthy of promotion.[9]  AMETEK, however, provides no evidence as to how it viewed these projects when it evaluated her for a promotion.  In the absence of this information, the Court cannot conclude that no reasonable jury would find these projects unworthy of promotion.  Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (explaining that, at summary judgment, "'[t]he court may not . . . weigh the evidence or

---

[8] There may also be a dispute as to whether Burke and Montgomery were aware that Brown had offloaded the 401(k) audits.  There is evidence that Montgomery spoke with Stevens, in September 2018 about potential projects, such as the 401(k) audits, that Brown could take on to make herself a better promotion candidate.  This conversation, however, took place after Virelli had been promoted in March 2018.  Moreover, the conversation only indicates that Montgomery was aware that Brown was not doing the 401(k) audits in September 2018.  It does not resolve the dispute as to whether he knew that she had previously been responsible for that work and offloaded it.  With regard to Burke, there is nothing to suggest that he was ever aware that Brown offloaded the 401(k) audits.

[9] The parties dispute whether Brown's supervisors ever formally offered her the lease project, but whether it was offered to her is immaterial because Brown testified that she had no interest in working on the project, referring to it as "an annoying compliance project," App. 466 at 136:14-18.

8

make credibility determinations' because 'these tasks are left for the fact finder'" (quoting Pichler v. UNITE, 542 F.3d 380, 386 (3d Cir. 2008))).

In short, if a factfinder accepted the facts as Brown presents them, then it could conclude that offloading the audits had no effect on her promotion potential and that she contributed to other projects, thus undercutting the truth of AMETEK's justifications for not promoting her. Accordingly, a reasonable factfinder could conclude that AMETEK's proffered legitimate, nondiscriminatory reasons were pretextual.[10] Tomasso v. Boeing Co., 445 F.3d 702, 708 (3d Cir. 2006) (explaining that evidence is more likely to show weaknesses in the employer's proffered reasons where it implicates the "core facts" underlying those reasons). Thus AMETEK is not entitled to summary judgment.[11]

## III

For the foregoing reasons, we will vacate the order of the District Court and remand for further proceedings.

---

[10] The "honest belief rule," which provides that an employer is not liable for discrimination if it honestly believes the justifications for an adverse employment action, Capps v. Mondelez Global, LLC, 847 F.3d 144, 152-54 (3d Cir. 2017), is inapt here because, as discussed above, the record does not indicate that AMETEK was simply wrong in deciding not to promote Brow, rather it suggests that AMETEK's proffered reasons for its decision were pretext.

[11] Because there are material factual disputes on other subjects, we need not address: (1) accounts from Brown and other female employees purporting to show that female employees were treated differently than male employees, and (2) statistics reflecting that a lower percentage of women than men hold Supervisory, Directorial, Senior Management, and Executive level positions at AMETEK.